### IN THE UNITED STATES DISTRICT COURT FOR THE
### EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRANDON HARRELL | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 11-7361 |
| | : | |
| KELLOGG COMPANY, et al., | : | |
| Defendants. | : | |

September 10, 2012                                                    Anita B. Brody, J.

### MEMORANDUM

Plaintiff Brandon Harrell ("Harrell") brings this 42 U.S.C. §1981 action against Defendants

Kellogg Company, Keebler Company,[1] and Steven Chelston (collectively, "Kellogg") for racial

discrimination (Count I), retaliation (Count II), and a hostile work environment (Count III),

stemming from his work in Kellogg's warehouse.  Harrell seeks back pay, front pay, as well as

damages for pain and suffering and punitive damages.  Kellogg moves to dismiss all counts.[2]

Federal question jurisdiction is proper pursuant to 28 U.S.C. §1331.  For the reasons set forth

below, Kellogg's motion to dismiss will be denied.

### I.       BACKGROUND[3]

Brandon Harrell is an African-American male and former Kellogg employee.  On March 13,

2006, Kellogg hired Harrell as a warehouseman at its Philadelphia, Pennsylvania distribution

center.  Harrell worked for Kellogg for approximately five years.  He performed general manual

---

[1] Keebler Company is now a complete subsidiary corporation of Kellogg.  Defs.' Mot. 1 n.1.

[2] On March 22, 2012, I approved Defendants' joint stipulation permitting Mr. Chelston to join his Co-Defendants' pending motion to dismiss.  *See* ECF No. 30.

[3] When reviewing a motion to dismiss under Rule 12(b)(6), the court "accept[s] the facts of the complaint as true and characterize[s] the facts most favorably to the plaintiff . . . ."  *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1164-65 (3d Cir. 1987).

tasks that involved physical labor.  Kellogg employed approximately fifty employees in the

warehouse.  Steven Chelston, a Caucasian male, supervised Harrell.  Harrell was represented by

the Food Driver Salesman, Dairy and Ice Cream Workers Union, Local No. 463 ("Union").  In

2007, the Union entered into a collective-bargaining agreement ("CBA") with Kellogg.

On February 17, 2010, Harrell injured his knee while lifting products at work.[4]  The next day,

a physician representing Kellogg examined the knee and imposed work-related restrictions.

Harrell alleges that Kellogg did not honor those restrictions due to his race.[5]  Instead, Kellogg

assigned Harrell, an experienced African-American employee, the same pre-injury work duties.

The assignments included walking and heavy lifting.  Harrell repeatedly complained to

management, including African-American supervisor Maurice Sealy.  Kellogg did not assign

him to light-duty work until a physician drained fluid from his knee in April.  On account of his

race, Harrell was not assigned to the areas typically reserved for light-duty work.  Instead,

Kellogg placed him near a high-speed forklift operation and behind high-stacked pallets of

product.  These assignments were not only dangerous but also near the warehouse's trash area.

Chelston told Harrell that he was not permitted to talk, read, work, or even answer emergency

phone calls.  Chelston then moved Harrell to the back of the warehouse where the other

employees could not see the African-American warehouseman.  He remained there for a week.

Kellogg finally relocated Harrell to a location outside of Sealy's office.  But at Chelston's

behest, Sealy told Harrell to move his seat further from the office.  The new dangerous location

was near a metal guard rail and the warehouse's electrical boxes.  Kellogg informed Harrell that

---

[4] On October 3, 2007, Harrell filed a workers' compensation claim related to an ankle injury.  CorVel, Kellogg's
third-party workers' compensation administrator, accepted the claim.  Harrell received compensation for lost wages
and medical treatment for the claim.
[5] In the Complaint, Harrell sometime singles out Chelston as the individual responsible for the racially
discriminatory treatment he received, while at other times he refers generally to Defendants' management.

he could be terminated if he did not remain in the unsafe location.  Seally then told Harrell that Kellogg was not acting in the best interests of African-American employees.

In May 2010, Harrell filed a Title VII complaint of racial discrimination with the Equal Employment Opportunity Commission ("EEOC").  In June 2010, after learning of the EEOC complaint, Kellogg informed Harrell that it had no work for him and effectively terminated him. Meanwhile, Kellogg permitted a less senior Caucasian employee to perform light-duty sedentary work that Harrell could have performed.

## II.    LEGAL STANDARD

Kellogg brings a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Kellogg argues that the CBA's mandatory arbitration provision divests this Court of subject matter jurisdiction under 12(b)(1).  The Third Circuit, however, has "support[ed] the traditional practice of treating a motion to compel arbitration as a motion to dismiss for failure to state a claim upon which relief can be granted."  *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 597 (3d Cir. 2004); *see also Nationwide Ins. Co. of Columbus, Ohio v. Patterson*, 953 F.2d 44, 45 n.1 (3d Cir. 1991) ("Dismissal of a declaratory judgment action because the dispute is covered by an arbitration provision is generally effected under Rule 12(b)(6) covering dismissals for failure to state a claim upon which relief can be granted . . . .").  Therefore, I will review Kellogg's motion to dismiss under Rule 12(b)(6).

Under Rule 12(b)(6), a court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff."  *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).  This "assumption of truth" is "inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The complaint must allege facts sufficient to "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.* (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings.  However, an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered . . . ."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis omitted) (citations omitted) (internal quotation marks omitted).  Thus, a court may "consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994).  Further, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."[6]  *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

## III.    DISCUSSION

Harrell brings claims under 42 U.S.C. § 1981, alleging racial discrimination, retaliation, and a hostile work environment.  Kellogg moves to dismiss the claims for three reasons: (1) Harrell's claims are directly governed by the CBA, which requires him to arbitrate all grievances; (2) Harrell's claims require interpretation of the CBA; therefore they must go to arbitration; and (3)

---

[6]  Kellogg attached a copy of the CBA to its motion to dismiss.   The authenticity of the CBA is undisputed.  Therefore, I shall consider it when deciding Kellogg's motion.

Harrell waived all claims against Kellogg when he settled his prior workers' compensation claim.

### a.  Does the CBA Explicitly Compel Harrell to Arbitrate His § 1981 Claims?

Kellogg argues that the CBA requires Harrell to arbitrate his claims.  Harrell counters that his claims are properly brought in federal court because the CBA does not govern his § 1981 discrimination claims.

In December 2007, the Union representing the warehousemen at the Philadelphia distribution center entered into a CBA with Kellogg.  Harrell does not dispute the validity of the CBA.   The CBA provides that all grievances are subject to binding arbitration.  According to Article 4.1 of the CBA, "Grievances shall consist of disputes or disagreements concerning the interpretation and application of the provisions of this Agreement."  Pl.'s Resp. Ex. 3, Art. 4.1.  Although Article 4.1 contains no reference to discrimination claims, the CBA does contain a separate nondiscrimination provision that states:

> The Employer and the Union agree not to discriminate against any qualified individual with respect to hiring, compensation, terms or conditions of employment because of such individual's race, color, religion, sex, national origin, disability, age, or because an employee is a Veteran of the Vietnam Era, nor will they limit, segregate or classify employees in any way to deprive any qualified individual employee of employment opportunities because of race, color, religion, sex, national origin, disability, age, or because an employee is a Veteran of the Vietnam Era.  The Company and Union agree to abide by the Americans with Disabilities Act.  Whenever any words are used in this Agreement in the masculine gender, they shall be construed as though they were also used in feminine gender.

*Id.* at Art. 1.4.  The CBA does not mention § 1981.

The parties dispute whether Harrell's § 1981 claims are grievances that must be arbitrated. Harrell contends that his federal statutory claims are not grievances because grievances are defined as "disputes or disagreements concerning the interpretation and application of the provisions of this Agreement," *id.* at Art. 4.1, and § 1981 is not mentioned in any provision of

the CBA.  Thus Harrell argues that his § 1981 claims do not fall under the CBA. Kellogg contends that Harrell's § 1981 claims are grievances that must be arbitrated because the nondiscrimination provision of the CBA explicitly prohibits racial discrimination.

Although an employee generally has the right to pursue his/her federal statutory discrimination claims in federal court, an employee may "waive[] . . . the right to seek relief from a court in the first instance."  *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 265-66 (2009). While an employee's right to pursue his/her federal statutory claims in a judicial forum may be waived in his/her union-negotiated CBA, the Supreme Court has repeatedly required "that an agreement to arbitrate statutory antidiscrimination claims be 'explicitly stated' in the collective-bargaining agreement."  *Pyett*, 556 U.S. at 258 (quoting *Wright v. Universal Maritime Service Corporation*, 525 U.S. 70, 80 (1998)); *see also Alexander v. Gardner-Denver Company*, 415 U.S. 36 (1974).  While the Court has never defined what constitutes an explicit waiver, the Court in *Wright* and *Gardner-Denver* held that the CBA in question did not contain an explicit waiver, providing valuable insight into what does not constitute an explicit waiver.  The teachings of *Gardner-Denver*, *Wright*, *Pyett*, and their appellate court progeny, make it clear that the CBA governing Harrell's employment did not explicitly waive his right to litigate his § 1981 claims in federal court.   This memorandum analyzes the Supreme Court's views on union-negotiated waivers of an employee's right to litigate federal statutory discrimination claims, and addresses several appellate court opinions that rely upon these views.

In *Wright*, the Supreme Court addressed the following question presented by the case: Did the employee waive his right to seek relief in federal court for his Americans with Disabilities Act ("ADA") claim because his union had entered into a CBA that contained a general arbitration clause?  525 U.S. at 72.  The CBA provided that "[m]atters under dispute" would be

submitted to arbitration, and that the "Agreement is intended to cover all matters affecting wages, hours, and other terms and conditions of employment . . . ." *Id.* at 72-73 (internal quotation marks omitted).  Additionally, the CBA stated that "[i]t is the intention and purpose of all parties hereto that no provision or part of this Agreement shall be violative of any Federal or State Law." *Id.* at 73 (internal quotation marks omitted).

At the time *Wright* was decided, the law was unclear as to whether a union could ever negotiate to waive an employee's right to bring his/her federal statutory discrimination claims in federal court.  *Id.* at 75-77.  Without deciding whether a union-negotiated waiver could ever be enforceable, the Court side-stepped the issue by holding that a prerequisite to enforcing arbitration of federal statutory claims is that the waiver in the CBA "must be clear and unmistakable." *Id.* at 80 (internal quotation marks omitted).  Thus the Court held that the waiver of the right to bring federal statutory discrimination claims must be "explicitly stated" in the CBA.  *Id.* at 80 (internal quotation marks omitted).

In *Wright*, the Court found that the general provision "providing for arbitration of all '[m]atters under dispute,' . . . could be understood to mean matters in dispute under the contract," and noted that "the contract contains no explicit incorporation of statutory antidiscrimination requirements." *Id*. at 80.  Therefore, the general arbitration provision did not contain an explicit waiver of the employee's right to bring his ADA claims in federal court.  *Id.* Additionally, the Court found that while a clause of the CBA stated that "no provision or part of this Agreement shall be violative of any Federal or State Law," it did not "mak[e] compliance with the ADA a contractual commitment that would be subject to the arbitration clause." *Id.* at 81 (internal quotation marks omitted).  The Court held that the CBA did not contain a clear and unmistakable waiver of the employee's right to litigate his claims in federal court, and the

employee could proceed with his lawsuit. *Id.* at 82.  While the Court held that the waiver at issue was not explicit, it did not define what constitutes a clear and unmistakable waiver.

In *Pyett*, the Court resolved the key question left open in *Wright*: Is a CBA that clearly and unmistakably requires union members to arbitrate a federal statutory discrimination claim enforceable?  556 U.S. at 251, 273.  In deciding this question, the Court affirmed its holding in *Wright*, which required that "an agreement to arbitrate statutory antidiscrimination claims be 'explicitly stated' in the collective-bargaining agreement." *Id.*  at 258.  However, unlike in *Wright*, the Court was not faced with the task of determining whether the arbitration provision in the CBA was explicit because it was conceded on appeal that the CBA explicitly required arbitration of the employees' federal statutory discrimination claims.[7] *Id.* at 272.  Therefore, the Court did not tackle the task of defining what constitutes an explicit agreement to arbitrate federal statutory discrimination claims in a CBA.

Ultimately, the Court concluded that a collective-bargaining agreement that clearly and unmistakably requires arbitration of a federal antidiscrimination statute is enforceable. *Id.* at 274.  In reaching this decision, the Court took the opportunity to reexamine its earlier opinion in *Gardner-Denver*.  In doing so, the Court "disavow[ed] the antiarbitration dicta of *Gardner-Denver*," but reaffirmed its narrow holding that arbitration did not preclude the employee from bringing his Title VII claim in federal court because the "[t]he employee's collective-bargaining

---

[7]  The nondiscrimination provision of the CBA in *Pyett* provided:

> There shall be no discrimination against any present or future employee by reason of race, creed, color, age, disability, national origin, sex, union membership, or any other characteristic protected by law, including, but not limited to, claims made pursuant to Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the New York State Human Rights Law, the New York City Human Rights Code, . . . or any other similar laws, rules, or regulations. All such claims shall be subject to the grievance and arbitration procedures . . . as the sole and exclusive remedy for violations.

*Pyett*, 556 U.S. at 251-52 (internal quotation marks omitted).  Thus the Court had no difficulty accepting the parties' concession on appeal that the employee had explicitly waived his right to litigate his Age Discrimination in Employment Act claims.

agreement did not mandate arbitration of statutory antidiscrimination claims." *Id.* at 262, 267 n.9.  In *Gardner-Denver*, the CBA mandated compulsory arbitration for any "differences aris(ing) between the Company and the Union as to the meaning and application of the provisions of this Agreement and any trouble aris(ing) in the plant."  415 U.S. at 40-41 (alteration in original) (internal quotation marks omitted).  Additionally, the CBA contained a provision that "there shall be no discrimination against any employee on account of race, color, religion, sex, national origin, or ancestry." *Id.* at 39 (internal quotation marks omitted).  Before bringing a claim in federal court, the employee had actually submitted to arbitration a claim that he was unjustly discharged because of his race. *Id.* at 42.  The arbitrator ruled that the employee "had been discharged for just cause." *Id.* (internal quotation marks omitted).  After losing in arbitration, the employee brought a claim in federal district court, alleging racial discrimination in violation of Title VII. *Id.* at 43.  The district court held, and the Court of Appeals for the Tenth Circuit affirmed, that the employee had "voluntarily elected to pursue his grievance to final arbitration under the nondiscrimination clause of the collective-bargaining agreement, [and] was bound by the arbitral decision and thereby precluded from suing his employer under Title VII." *Id.*

The Court in *Gardner-Denver* reversed the Tenth Circuit's decision.  The Court recognized that the CBA did not expressly reference Title VII; rather it contained a general antidiscrimination provision. *Id.* at 39.  Thus, the Court held that "[b]ecause the collective-bargaining agreement gave the arbitrator 'authority to resolve only questions of contractual rights,' his decision could not prevent the employee from bringing the Title VII claim in federal court 'regardless of whether certain contractual rights are similar to, or duplicative of, the

substantive rights secured by Title VII.'" *Pyett*, 556 U.S. at 262 (quoting *Gardner-Denver*, 415 U.S. at 53-54).

Following the decision in *Pyett*, and its affirmation of *Gardner-Denver*, the Tenth Circuit was confronted with the question of whether an employee, who had arbitrated a contractual discrimination claim and received an adverse determination, could pursue statutory claims under Title VII and § 1981 in federal court. *See Matthews v. Denver Newspaper Agency LLP*, 649 F.3d 1199, 1201-03 (10th Cir. 2011). In *Matthews*, the CBA contained a general arbitration agreement that "applied only to disagreements as to the interpretation, application or construction *of this contract* [i.e. the CBA], including all disputes involving discharge or discipline." *Id.* at 1207 (alteration in original) (internal quotation marks omitted). Additionally, the CBA provided: "The Employer and the Union acknowledge continuation of their policies of no discrimination against employees and applicants on the basis of age, sex, race, religious beliefs, color, national origin or disability in accordance with and as required by applicable state and federal laws." *Id.* at 1202 (internal quotation marks omitted). The CBA never explicitly referenced Title VII or § 1981.

Based on *Gardner-Denver* and its progeny, the *Matthews* Court recognized that the "crucial inquiry is whether the CBA's arbitration provisions covered Matthew's statutory claims." *Id.* at 1206. Because the CBA only provided for arbitration of disagreements related to the interpretation, application, or construction of the CBA, the Tenth Circuit concluded that "Matthews's statutory claims consequently fall outside the scope of the arbitration agreement . . . ." *Id.* at 1207. "That Matthews's contractual rights and statutory rights were coterminous [was] of no moment" to the court because, while the CBA gave the arbitrator the power to resolve his contractual rights, the arbitrator did not have the authority to resolve his statutory rights. *Id.*

Relying on the reasoning in *Gardner-Denver*, The Tenth Circuit held that the CBA did not require arbitration of the employee's statutory claims because it did not expressly waive his right to bring these claims in a judicial forum. *Id.* at 1206-1208.

   In addition to *Wright*, *Gardner-Denver*, and *Matthews*, many courts have addressed the issue of whether a CBA clearly and unmistakably requires an employee to litigate his/her federal statutory claims. Several courts of appeals have concluded that a CBA that does not explicitly reference the federal statute at issue in the litigation, but includes a general arbitration provision, and in some instances an antidiscrimination provision, does not contain a sufficiently clear and unmistakable waiver of the employee's right to litigate his/her federal statutory discrimination claims in a judicial forum. *See, e.g., Rogers v. N.Y. Univ.*, 220 F.3d 73, 74, 76-77 (2d Cir. 2000), *abrogated on other grounds by Pyett*, 556 U.S. 247 (holding that a CBA with a general arbitration provision and a nondiscrimination provision that prohibits discrimination as defined by Federal, New York State, and New York City laws is insufficient to clearly and unmistakably waive the employee's right to litigate her ADA and FMLA claims); *Bratten v. SSI Servs., Inc.*, 185 F.3d 625, 631-32 (6th Cir. 1999) (holding that a CBA with a general arbitration provision and a nondiscrimination provision that prohibits discrimination based on disability and explicitly refers to Title VII is insufficient to clearly and unmistakably waive the employee's right to litigate his ADA claim); *Carson v. Giant Food, Inc.*, 175 F.3d 325, 332 (4th Cir. 1999) (holding that a CBA with a general arbitration provision and a nondiscrimination provision that prohibits discrimination based on race or age, but does not explicitly incorporate by reference federal statutory law is insufficient to clearly and unmistakably waive the employees' rights to litigate their federal statutory claims); *Quint v. A.E. Stanley Mfg. Co.*, 172 F.3d 1, 8-9 (1st Cir. 1999) (holding that a CBA with a general arbitration provision that lacked any explicit reference to

federal antidiscrimination statutes is insufficient to clearly and unmistakably waive the employee's right to litigate her ADA claim).

Although the Supreme Court has never defined what constitutes an explicit waiver of the right to pursue federal statutory discrimination claims in a judicial forum, the Court in *Wright* and *Gardner-Denver* have provided insight into what does not constitute an explicit waiver. The CBA governing Harrell's employment contains a general arbitration provision that compels Harrell to arbitrate "disputes or disagreements concerning the interpretation and application" of the CBA.  Pl.'s Resp. Ex. 3, Art. 4.1.  Additionally, the CBA contains a nondiscrimination provision that prohibits Harrell from discriminating on the basis of race.  However, the CBA never mentions § 1981.  "[P]ost *Wright* courts appear to be in agreement that a statute must specifically be mentioned in a CBA for it to even approach *Wright*'s 'clear and unmistakable' standard."  *Bratten*, 185 F.3d at 631.  The teachings of *Gardner-Denver*, *Matthews*, *Rogers*, *Bratten*, *Carson*, and *Quint* lead to the clear conclusion that a CBA with a general arbitration provision and a nondiscrimination provision that does not expressly mention the federal antidiscrimination statute under which the employee seeks redress, does not contain an explicit waiver to the employee's right to litigate his/her statutory claims in a judicial forum.  While the nondiscrimination provision in the CBA governing Harrell's employment expressly mentions the ADA, Harrell only brings claims under § 1981; thus the explicit reference to the ADA is inconsequential.  *See Bratten*, 185 F.3d at 631 (holding that a CBA that expressly mentioned Title VII did not explicitly waive the employee's right to litigate his ADA claim in federal court).  The CBA at issue did not clearly and unmistakably waive Harrell's right to litigate his § 1981 claims in federal court.  Therefore, I will deny Kellogg's motion to dismiss on the basis that the CBA compels arbitration of Harrell's § 1981 claims.

### b. Do Harrell's § 1981 Claims Require Interpretation of the CBA, thereby Compelling Harrell to Arbitrate Them?

Kellogg argues that Harrell's claims require an interpretation of the CBA, specifically Article 20's "Transitional Duty Program."  Under Kellogg's line of reasoning, Harrell's claims are not strictly statutory claims because they also require contractual interpretation.  Thus, Kellogg argues that the CBA's mandatory grievance process governs, and Harrell's claims should be dismissed or stayed pending resolution of the arbitration.

The potentially applicable sections of Article 20 provide:

1. The Company, at its option, may put in place a Transitional Duty Program.  The Company agrees to cooperate toward the prompt disposition of employee on-the-job injury claims.  The Employer shall provide workers' compensation protection for all employees required by state law, if the injury arose out of or in the course of employment. . . .

6. (A) Kellogg's Snacks shall offer transitional assignments to those employees who are temporarily limited due to a compensable worker's [sic] compensation injury and who have received a detailed medical release from the attending physician clearly setting forth the limitations under which the employee may perform such transitional assignments.  Assignments must be made in strict compliance with physical restrictions as outlined by the attending physician(s). . . .

7. (A) The assignment of transitional assignments shall be in compliance of the seniority provisions of the Collective Bargaining Agreement (CBA).  However, should an employee remain on transitional duty, the Company shall have the right to have the employee reevaluated by a Company appointed physician in accordance with Workman's Compensation statutes (twice annually)

   (B) The transitional work assignment may include tasks that are not covered by the current Collective Bargaining Agreement (CBA), nor shall be considered as falling under the terms and working conditions of the CBA now or in the future.  These tasks shall only be offered to employees on the Transitional Duty Program.  The non-bargaining unit tasks may include such items as filing, scheduling, clerical duties, duties related to the delivery of product, other office related duties, etc. . . .

11. The Union and Employer agree to abide by all state and federal laws and regulations.

Pl.'s Resp. Ex. 3, Art. 20.

According to Kellogg, Harrell's claims focus on transitional duty and require the interpretation of the above provisions addressing the assignment of such duty.  At the motion to dismiss stage, a court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." *Buck*, 452 F.3d at 260.  Based on the facts alleged in the Complaint, Harrell's claims are straightforward § 1981 claims that do not require an interpretation of the CBA.   Although Harrell's claims do not appear from the face of the Complaint to require interpretation of the CBA, discovery might yield another conclusion. Therefore, I will deny Kellogg's motion to dismiss on the basis that Harrell's § 1981 claims require interpretation of the CBA, and thereby require arbitration.  However, Kellogg may raise this issue at a later stage of the litigation.

### c.   Has Harrell Waived His Claims Against Kellogg?

Kellogg argues that Harrell's Complaint should be dismissed because Harrell released any and all claims against Kellogg when he signed his workers' compensation settlement agreement. Harrell counters that the agreement only released his workers' compensation claims and did not cover statutory discrimination claims; therefore, he is permitted to proceed with his § 1981 claims.

In support of its argument, Kellogg attaches the September 21, 2011 settlement agreement to its motion to dismiss.  Harrell argues that the court cannot review the settlement agreement at this stage of the litigation.  Under Rule 12(b)(6), a district court generally may not review matters extraneous to the pleadings.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  Although there are exceptions to the general rule, they do not apply to the settlement agreement.  The settlement agreement is not "*integral to or explicitly relied upon* in the complaint." *Id.* (internal quotation marks omitted).  The Complaint makes no

14

reference to the settlement agreement, and Harrell does not assert that the agreement applies to the three statutory discrimination claims alleged in the Complaint.  Therefore, I will not address Kellogg's allegation that by entering into the settlement agreement Harrell has waived all claims against Kellogg.  I will deny Kellogg's motion to dismiss based on this allegation.  However, Kellogg may raise this issue at a later stage of the litigation.[8]

## IV.     CONCLUSION

For the reasons set forth above, I will deny Kellogg's motion to dismiss.

**s/** Anita B. Brody

_____

ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:        Copies **MAILED** on _____ to:

_____

[8] Additionally, I will not examine the resignation letter included with the settlement agreement at the motion to dismiss stage.  Kellogg may also raise its argument regarding judicial estoppel at a later stage of the litigation. Discovery is necessary to determine the circumstances surrounding Harrell's termination.